**UNIONTOWN RETAIL # 36, LLC, d/b/a The Lion's Den # 36, Appellant,**

v.

**BOARD OF COMMISSIONERS OF JACKSON COUNTY, Appellee.**

No. 36A01–1008–MI–434.

Court of Appeals of Indiana.

June 7, 2011.

J. Michael Murray, Steven D. Shafron,
Berkman Gordon Murray & DeVan, Cleve-

land, OH, Stanley E. Robison, New Albany, IN, Attorneys for Appellant.

Stacy K. Newton, Rudolph Fine Porter & Johnson, LLP, Evansville, IN, Susan D. Bevers, Seymour, IN, Scott D. Bergthold, Chattanooga, TN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Uniontown Retail 36, LLC, d/b/a The Lion's Den # 36, ("Lion's Den") appeals the trial court order granting the motion for summary judgment filed by the Board of Commissioners of Jackson County ("the Board") and permanently enjoining Lion's Den from operating a sexually oriented business at its current location in Jackson County.

We affirm.[1]

### ISSUES

1. Whether the trial court erred when it concluded that two ordinances were not improperly adopted zoning laws.

2. Whether the trial court erred in concluding that operation of a sexually oriented business by Lion's Den was not grandfathered as a nonconforming use.

3. Whether the trial court's summary judgment order must be reversed because there is a genuine issue of material fact as to whether the ordinances were narrowly tailored to further a substantial governmental interest.

4. Whether the trial court erred in its determination that the ordinances are not constitutionally overbroad.

5. Whether the trial court erred when it concluded that the counterclaim by Lion's Den must fail.

### FACTS

In early 2005, land at the southwest corner of the intersection of highways I–65 and State Road 250 in an unincorporated area was developed—with a building, driveway, and signage for "a tenant" constructed as authorized by permits from Jackson County. (Lion's Den App. 91).

On August 16, 2005, the Board adopted Ordinance 2005-5, titled "Sexually Oriented Business Ordinance." (Lion's Den App. 28). The 26–page ordinance stated its first purpose as being

> to regulate sexually oriented businesses in order to promote the health, safety and general welfare of the citizens of Jackson County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within unincorporated areas of Jackson County.

*Id.* at 29. Additional purposes were also stated. Next, the ordinance contained the following findings:

> (1) Sexually oriented businesses, as defined herein, should be regulated.
>
> (2) Sexually oriented businesses should be segregated from one another and from religious institutions, school, parks, residences and residential neighborhoods to protect the public health, welfare and safety because sexually oriented businesses, as a category of commercial uses, are associated with a wide variety of adverse secondary effects, including but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, illicit drug use, drug trafficking, illicit and unsanitary sexual activity, negative impacts on property values,

---

1. We heard oral argument on this cause in our Courtroom in Indianapolis on April 5, 2011. We commend counsel on their intense and well-researched presentations.

blight, litter, and sexual assault and exploitation.

(3) Each of the foregoing negative secondary effects constitutes a harm which Jackson County has a substantial governmental interest in abating and/or preventing in the future.

*Id.* at 30.

The operative effect of the ordinance was to prohibit a sexually oriented business from operating within 1,000 feet of a residence[2] and to require the sexually oriented business to obtain a license. The ordinance was effective upon adoption, August 16, 2005, *except* for the provision establishing a fine for violation of the ordinance—which would not become effective until September 1, 2005, after publication of the ordinance in two successive weekly editions of the local newspaper.

On August 19, 2005, on the improved property at the intersection of I–65 and State Road 250, Lion's Den opened as an adult bookstore and sexual device shop. Lion's Den was within 1,000 feet of a residence, and it had obtained no license to operate a sexually oriented business.

That same day, August 19, 2005, the Board filed a complaint for a preliminary and permanent injunction of the "sexually oriented business" operated by Lion's Den. (Bd.App.7).

On August 30, 2005, the Board adopted Ordinance 2005–6, which amended the sexually oriented business ordinance with additional licensing and other provisions. Ordinance 2005–6 again stated its purpose as quoted above; and to support its previous findings, cited to numerous court cases and "reports concerning secondary effects occurring in and around sexually oriented businesses" in seventeen U.S. cities. (Lion's Den App. 58). Ordinance 2005–6 included a provision for a one-year amortization period to allow an improperly located sexually oriented business that was "existing and operating lawfully in all respects prior to August 15, 2005" to recoup its investment at its current location before relocating to a lawful site. *Id.* at 67. Ordinance 2005–6 also required that "[a] sexually oriented business existing and operating lawfully in all respects prior to August 15, 2005" apply for the necessary licensing within thirty days of August 30, 2005. *Id.* at 68.

On September 1, 2005, the Board filed an amended complaint for permanent injunction, based upon Ordinance 2005–6. On September 26, 2005, Lion's Den filed its answer and counterclaim.[3] The counterclaim alleged that both ordinances, 2005–5 and 2005–6, were unconstitutional, and sought declaratory relief and compensatory damages.

On January 3, 2006, the Board adopted Ordinance 2005–9, which amended the county zoning ordinance by adding a new chapter relating to "sexually oriented businesses." (Lion's Den App. 79). Ordinance 2005–9 specified that a sexually oriented business was "a permitted use" in "General Business," "Industrial" and "Agriculture" Districts. *Id.* at 85. Thus, unlike Ordinances 2005–5 and 2005–6, Ordinance 2005–9 specified where a sexually oriented business *could* be located. Nevertheless, Ordinance 2005–9 also barred a sexually oriented business from being located "within 1,000 feet of ... any residence...." *Id.* at 85.

---

**2.** Or, within 1,000 feet of any religions institution, school, boys club, girls club, or similar existing youth organization, or public park or public building, or property zoned for residential use.

**3.** Lion's Den did not include this answer and counterclaim in its Appendix.

On November 18, 2008, the Board filed its verified complaint for declaratory judgment and permanent injunction. The Board asserted that Lion's Den was in violation of the three ordinances by operating a sexually oriented business without a license to do so and within 1,000 feet of a residence.[4]

On February 8, 2010, the Board filed its motion for summary judgment. It asserted that because Lion's Den had never applied for or obtained the license required, and continued to operate a sexually oriented business within 1,000 feet of a residence in violation of its validly enacted county ordinances, the Board was "entitled to judgment as a matter of law." (Bd.App. 119).[5]

On March 8, 2010, Lion's Den filed its brief in opposition.[6] Its brief extensively cited to the affidavit it submitted from Dr. Daniel Linz, a 32–page affidavit with ten exhibits. Lion's Den argued to the trial court that Ordinances 2005–5 and 2005–6 were improperly adopted zoning laws, in that they were not enacted pursuant to the provisions of Indiana statute in that regard; that Lion's Den's use was a grandfathered nonconforming use; that the ordinances were not narrowly tailored to further a substantial government interest; and that the ordinances were unconstitutionally overbroad.

The CCS and trial court order reflect a March 21, 2010, hearing on the Board's motion for summary judgment. At the hearing, according to the trial court's order, the parties stipulated to three matters: that Lion's Den was a sexually oriented business; that it had not applied for a license under the Board's ordinance; and that it was "too close to a residence under the Board's ordinance." (Order p. 1).

On July 30, 2010, the trial court issued its twenty-one page order. The trial court first considered whether Ordinances 2005–5 and 2005–6 were "zoning ordinances" or "licensing ordinances," noting that "if . . . considered zoning ordinances, they were enacted improperly," but "if . . . licensing ordinances, they were not improperly enacted." *Id.* at 4. The trial court reviewed *Pro–Eco, Inc. v. Board of Comm'rs of Jay County, Ind.,* 776 F.Supp. 1368 (S.D.Ind. 1990), *Board of Comm'rs of LaPorte County v. Town & Country Utils., Inc.,* 791 N.E.2d 249 (Ind.Ct.App.2003), *trans. denied,* and *City of Carmel v. Martin Marietta Materials, Inc.,* 883 N.E.2d 781 (Ind. 2008). The trial court concluded that

> the ordinances are licensing ordinances, exempt from the procedural burdens of zoning ordinance [sic], which serves to grant the Board more leeway to exercise its police power in an efficient manner, under the same policy considerations evidenced in *City of Carmel.*

(Order p. 11).

The trial court next considered whether Lion's Den was "grandfathered as a non-

---

**4.** According to the trial court's order and the CCS, on March 10, 2009, Lion's Den filed its answer and counterclaim, but it is not included in the Appendices filed.

**5.** With its motion, the Board included an affidavit of the county building commissioner stating that Lion's Den had never applied for a permit to operate a sexually oriented business; that there were at least twenty sites within designated districts where such a business could be located, and a listing thereof; such possible locations constituted 3.9% of the designated districts; and that Lion's Den was within 570' of one residence and within 642' of another. Also submitted was an affidavit (and exhibits) describing the products for sale at the Lion's Den. Finally, the Board submitted an article from the April 2009 issue of "Law and Policy" entitled "Do 'Off-Site' Adult Businesses Have Secondary Effects? Legal Doctrine, Social Theory, and Empirical Evidence," by Professor Richard McCleary and Associate Professor Alan C. Weinstein.

**6.** The Appendix of Lion's Den did not include this brief.

conforming use." *Id.* The trial court found that Lion's Den did "not meet its burden" of having established that it " 'lawfully existed' before the passing of Ordinances 2005–5 and 2005–6" and thereby "proving a nonconforming use." *Id.* at 13, 14.

The trial court considered whether the ordinances were reasonably tailored. Citing to *Renton v. Playtime Theatres,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the trial court found that "ordinances (2005–5 and 2005–6) are regulations of time, place, and manner," as well as " 'content neutral' in that they are aimed at the undesirable secondary effects related to adult businesses," and that the evidence relied upon by the Board to be "reasonable." *Id.* at 15, 15–16, 16.

As to whether the ordinances were overbroad, it noted that Lion's Den's burden was to demonstrate "from the text of the law and from actual fact, that substantial overbreadth exists." *Id.* at 19. The trial court noted that "the Board has cited its basis and the studies to support that its ordinances are 'needed to control undesirable blight rather than merely being an attempt to control undesirable speech.' " *Id.* (quoting *Executive Arts Studio, Inc. v. City of Grand Rapids,* 391 F.3d 783, 796 (6th Cir., 2004)). It concluded that the Board's reliance on "voluminous studies" rendered the overbreadth facial challenge "not appropriate in this case." (Order at 19). With respect to "an applied overbreadth challenge," *id.,* the trial court found the ordinances to be sufficiently narrow.

Finally, as to the Lion's Den counterclaim, the trial court found it to "fail[ ] as a matter of law because 1) the ordinances are valid and constitutional, and 2) Lion's Den has operated since its opening unfettered by the ordinances." *Id.* at 21.

## DECISION

We review a summary judgment order de novo. *Tri–Etch, Inc. v. Cincinnati Ins. Co.,* 909 N.E.2d 997, 1001 (Ind.2009). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Motorists Mut. Ins. Co. v. Wroblewski,* 898 N.E.2d 1272, 1274 (Ind.Ct.App.2009), *trans. denied.*

### 1. *Zoning or Licensing Laws?*

■ Lion's Den argues that the trial court erred in concluding that Ordinances 2005–5 and 2005–6 were licensing ordinances rather than zoning ordinances. We disagree.

In *City of Carmel v. Martin Marietta Materials, Inc.,* 883 N.E.2d 781, 782 (Ind. 2008), the issue was whether Carmel's "ordinance regulating mining in the City" could not be enforced because "the City did not follow the statutory requirements applicable to enacting zoning ordinances." Our Supreme Court expressly noted the ordinance's title, ". . . An Ordinance . . . to Regulate Mining Operations Within the Corporate Boundaries of the City of Carmel." *Id.* at n. 2. It quoted the ordinance's stated "purposes for its enactment," which included "the protection of the public health, safety and welfare of the citizens of [the City], to mitigate the negative impacts of mining and processing of mineral resources on those citizens who reside adjacent to or near such operations," and found the "substantive sections of the Ordinance" to be "consistent with the preamble's stated intent." *Id.* at 783. Referring to Indiana's Home Rule Act, title 36 of the Indiana Code, our Supreme Court held

that the grant of authority to local government units demonstrated "a legislative intent to provide counties, municipalities, and townships with expansive and broad-ranging authority to conduct their affairs." *Id.* at 784. It then found that the ordinance at issue had been enacted by the City "in a general exercise of its authority to 'regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare,' as authorized by I.C. § 36–8–2–4." *Id.* at 785.

As to Martin Marietta's argument that the ordinance could not be enforced because its enactment failed to comply with the statutory prerequisites for enactment of a *zoning* ordinance, our Supreme Court reviewed *Board of Comm'rs of LaPorte County v. Town & Country Utils., Inc.* and *Pro–Eco Inc. v. Bd. of Comm'rs of Jay County,* cases involving ordinances for landfills. If found that in those cases, "the zoning process" had to be employed because the landfill ordinances "were zoning ordinances"; specifically, the landfill ordinances "were zoning ordinances ... because they dictated what type of land use was permitted and where—quintessential zoning." *Id.* at 788. Our Supreme Court found that Carmel's ordinance to regulate mining, however, was properly enacted by the "alternative" to the "zoning process" as an exercise of its police power, "consistent with the 'home rule' philosophy of title 36." *Id.* at 787.

Here, in the Board's statement of purposes in Ordinances 2005–5 and 2005–6 begins with the purpose

> to regulate sexually oriented businesses in order to promote the health, safety and general welfare of the citizens of Jackson County, and to establish reasonable and uniform regulations to prevent the deleterious secondary effects of sexually oriented businesses within unincorporated areas of Jackson County.

(Lion's Den App. at 29, 56). The ordinances further include the purpose of "protect[ing] children and the family environment from the deleterious and harmful secondary effects of sexually oriented" businesses. *Id.* at 29, 57. For defined types of sexually oriented businesses, the substantive sections of the ordinances provide for licensing, investigation, inspection, and hours of operation; as well as the prohibition of operating a sexually oriented business within 1,000 feet of a residence (or "religious institution, school, boys club, girls club, or similar existing youth organization, or public park or public building," *id.* at 38, 66), *i.e.,* at a distance from those whom the ordinances were designed to protect.

Further, unlike *City of Carmel,* Ordinances 2005–5 and 2005–6 do not specify zones, districts, or areas where sexually oriented *are* allowed, or the "quintessential zoning" matters of "what type of land use was allowed and where." 883 N.E.2d at 787. Rather, Ordinance 2005–9 specifies the zoned districts in which the sexually oriented business use is allowed, and there is no contention that it was not enacted pursuant to the provisions of the zoning statutes.

■ A "license" is a right or permission granted by some competent authority to carry on a business which, without such license, would be illegal. 18 Indiana Law Encyclopedia *Licenses* § 1 (2003) (citing *Denny v. Brady,* 201 Ind. 59, 163 N.E. 489 (1928)). Consistent therewith, including the analysis found in *City of Carmel,* we find that Ordinances 2005–5 and 2005–6 are properly enacted licensing ordinances, enacted by the Board in the exercise of its broad home rule "authority to 'regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare,' as authorized by I.C. § 36–8–2–4." *Id.* at 785.

### 2. *A Grandfathered "Use"?*

Lion's Den reminds us that Ordinance 2005–6 was not adopted until August 30, 2005; that Lion's Den opened for business on August 19, 2005; and, that Ordinance 2005–5, adopted on August 16th, contained a penalty clause. Because Indiana code section 36–2–4–8(b) provides that "[a]n ordinance prescribing a penalty or forfeiture for a violation must, before it takes effect, be published once each week for two (2) consecutive weeks," it argues, Ordinance 2005–5 "could not become effective until August 30, 2005, at the earliest." Lion's Den Br. at 19. Therefore, because Lion's Den was at the time of its adoption already operating its adult bookstore and sexual device shop, it "had a vested right in the property and . . . its entitlement to continue that use cannot be taken away without implicating the Due Process Clause or the Takings Clause." Lion's Den Br. at 19 (citing *Metropolitan Dev. Comm'n v. Pinnacle Media, LLC*, 836 N.E.2d 422 (Ind. 2005)).

Section 5 of Ordinance 2005–5 provided in subsection 24, that the penalty provision "shall be effective on September 1, 2005," but that "[a]ll other sections and provisions of this Sexually Oriented Business Ordinance shall be effective upon passage," *i.e.*, August 16, 2005. The trial court concluded that the penalty provision could be severed from Ordinance 2005–5 (adopted on August 16th), leaving the "valid" provisions as to "distance and . . . licensing . . . that rendered Lion's Den 'non-lawful' at the time of its opening on August 19, 2005." (Order p. 13). Lion's Den argues that such is error because according to Indiana Code section 36–2–4–8(b), the *ordinance itself* cannot "go into effect until it has been published twice." Lion's Den Br. at 20. However, it cites only the statutory language as authority for this proposition.

In *Smith v. George*, 181 Ind. 119, 103 N.E. 949, 950 (1914), the city's ordinance as related to liquor sales contained a section which set a license fee and another section which "fixe[d] a penalty." An Indiana statutory provision required that any local ordinance on liquor sales "be published once each week for two consecutive weeks" before being "in full force and effect." *Id.* at 949. The appellee argued that because the ordinance was "a penal one, publication should be had thereof before the same could take effect and be enforceable." *Id.* at 950. Our Supreme Court found that neither the license fee provision nor the penalty provision was "dependable upon the other for its validity"; noted the "universal rule of construction that if one section of a legislative act or city ordinance can be separated from the other sections or parts, and upheld as valid, it is the duty of the court to do so"; and found the license fee provision "valid and operative without the same having been published." *Id.*

■ According to the reasoning of *Smith*, the Board's ordinance, herein, requiring a license for the operation of a sexually operated business, and that such a business not be located within 1,000 feet of a residence was effective upon its August 16, 2005 adoption. Therefore, we find that Lion's Den has failed to meet its burden of proving that it was operating a lawful business at the time of the ordinance's adoption. *See Dandy Co., Inc. v. Civil City of South Bend*, 401 N.E.2d 1380, 1382 (1980) (burden of proving pre-existing nonconforming use rests with party asserting existence of such use).

### 3. *Tailoring of Ordinance*

■ Lion's Den argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to whether the ordinances are

narrowly tailored to further a substantial governmental interest. Though couched as a summary judgment argument, we bear in mind that Lion's Den essentially brings a constitutional challenge to the Board's ordinances. A duly enacted ordinance comes before this court clothed with the presumption of constitutionality, and the party challenging the constitutionality of the enactment bears the burden of proof, with all doubts resolved against that party. *Dvorak v. City of Bloomington,* 796 N.E.2d 236, 238 (Ind.2003).

In *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 44, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), therein, the zoning ordinance prohibited any adult motion picture theater from locating "within 1,000 feet of any residential zone, single-or multi-family dwelling, church, or park, and within one mile of any school." The United States Supreme Court found the ordinance to be "a form of time, place, and manner regulation," in that it was "aimed not at the *content* of the films shown at 'adult motion picture theatres,' but rather at the *secondary effects* of such theaters on the surrounding community." *Id.* at 46, 47, 106 S.Ct. 925. As a zoning ordinance designed to combat the undesirable secondary effects of a purveyor of sexually explicit materials, the issue was whether Renton's ordinance was "designed to serve a substantial governmental interest and allow[ed] for reasonable alternative avenues of communication." *Id.* at 50, 106 S.Ct. 925.

As to the first prong, the finding of adverse secondary effects, the Supreme Court found that Renton, "a city of approximately 32,000 people located just south of Seattle," had "reviewed the experiences of Seattle and other cities, and received a report from the City Attorney's Office advising as to developments in other cities." *Id.* at 44, 106 S.Ct. 925. The

Supreme Court held that "Renton was entitled to rely on the experience of Seattle and other cities," without requiring it to conduct new studies or produce evidence independent of that already generated by other cities, "so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Id.* at 51–52, 106 S.Ct. 925. It concluded that Renton was entitled to rely on the evidence cited. *Id.* at 52, 106 S.Ct. 925.

The court also noted that more than five percent of Renton's land area remained available for adult theater sites. Hence, it found the second prong—whether the Renton ordinance allowed for reasonable alternative avenues of communication—also to be met.

More recently, in *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 438, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002), the Supreme Court's plurality cites to its rationale, as previously noted in *Renton,* wherein, it held that a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating that its ordinance serves "a substantial, independent government interest," *id.,* at 438, 122 S.Ct. 1728 (citing *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 584, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)), but added the caveat that "shoddy data or reasoning" would not suffice. *Alameda Books,* 535 U.S. at 438, 122 S.Ct. 1728. Rather, the municipality's evidence "must fairly support the municipality's rationale for its ordinance." *Id.* at 439.

Lion's Den seizes on the language in *Alameda Books* as follows:

If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's

factual findings, the municipality meets the standard set forth in *Renton.*

*Id.* Thus, Lion's Den argues that its evidence, including the affidavit of Dr. Linz and attachments thereto, demonstrate that the Board's evidence does not support its rationale of adverse secondary evidence and disputes its finding in that regard. Hence, it concludes, summary judgment was improvidently granted because there exists material issues of fact in this regard. However, as noted above, Lion's Den contention is that the ordinance is unconstitutional, and whether the act of a legislative body is constitutional is a question of law. *See State v. Moss–Dwyer,* 686 N.E.2d 109, 110 (Ind.1997); *Matlock v. Indiana & I.C.R. Co.,* 16 Ind. 176 (1861).

The Board has identified multiple sources of relevant evidence indicating the secondary effects from the operation of a sexually oriented business. These included U.S. Supreme court cases, as well as various federal and state decisions in this regard; land use studies and crime impact reports; other municipalities' findings; and the analysis of Dr. Richard McCleary, an expert in statistics and criminology.

■ Lion's Den emphasizes the Seventh Circuit's decision in *Annex Books, Inc. v. City of Indianapolis,* 581 F.3d 460 (7th Cir.2009), which cited a study by Dr. Linz and found that it "call[ed] . . . into question" the justifications of Indianapolis for its adult entertainment ordinance and "require[d] an evidentiary hearing." *Id.* at 465. However, we are not bound by the circuit court's decision. *See Ind. Dept. of Public Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993). Lion's Den also cites to the Tenth Circuit's *Abilene Retail # 30, Inc. v. Comm'rs of Dickinson County,* 492 F.3d 1164 (10th Cir.2007), *cert. denied,* which concluded that an opinion of Dr. Linz had cast doubt on the evidence relied upon by the County—such that there was

a material dispute of fact. We did not find either of these two cases to be persuasive in *Plaza Group Prop. v. Spencer County Plan Comm'n,* 877 N.E.2d 877 (Ind.Ct. App.2007), *trans. denied,* and we find their reasoning equally unavailing here. We concur with its holding that "we should not be in the business of second-guessing the empirical assessment of municipalities enacting sexually oriented business ordinances." *Id.* at 892.

■■ A municipality's time, place, and manner regulation which indirectly affects speech must be "narrowly tailored." *Id.* at 892. The requirement "of narrow tailoring is satisfied" when it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and "the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* at 877 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 799–800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

■ Lion's Den argues that the ordinances herein are not narrowly tailored because their scope includes "retail businesses that do not present on-site entertainment" and businesses that carry a "small amount of adult material"—businesses for which the evidence did not "demonstrate[ ] . . . adverse secondary effects." Lion's Den Br. at 30. Having already concluded that the Board's evidence supported its ordinances to regulate sexually oriented businesses, we find Lion's Den argument must fail as to the narrow tailoring requirement.

### 4. *Constitutional Overbreadth*

■ In order to merit the "expansive remedy" of "invalidat[ing] *all* enforcement" of a law on the basis that it is "constitutionally overbroad," the overbreadth claimant bears the burden of dem-

onstrating "from the text of the law and from actual fact that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 120, 119, 122, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (internal citations omitted). This "substantial overbreadth" is a "showing that the law punishes a substantial amount of protected speech, judged in relation to the statute's plainly legitimate sweep." *Id.* at 118–19, 123 S.Ct. 2191.

As argued to the trial court, Lion's Den cited to the case of *Executive Arts Studio v. City of Grand Rapids*, 391 F.3d 783 (6th Cir.2004). In the Grand Rapids zoning ordinances, an "adult bookstore" was defined as including an establishment with "a segment or section" devoted to the sale or display of material characterized by its emphasis on specified anatomical areas or specified sexual activities. *Id.* at 787. The "substantial or significant" language had been defined as "five percent." *Id.* at 787. The Sixth Circuit considered Executive Arts' "facial challenge to the constitutionality of the 'segment or section' language." *Id.* at 796. The Sixth Circuit found the ordinance "was not narrowly tailored" because "its language sweeps up mainstream bookstores." *Id.* It then found that "even if" it were found to be narrowly tailored to affect only establishments shown to produce unwanted secondary effects, it would be unconstitutional "as applied" because in a city with over 2,500 parcels of commercially useable real estate, only "around a half dozen possible sites" would be available for an Executive Arts establishment. *Id.* at 798.

The Board's ordinances at issue here, however, contain neither the vague "section or segment" language nor the five percent definition of Grand Rapids' ordinances; rather, those ordinances specifically provide that an adult bookstore or adult video store is one that "has a significant or substantial portion (25% or more) of its stock-in-trade or interior business space allocated to, or derives 25% or more of its revenues from" certain sexually oriented materials. (Lion's Den App. 59; 80). Moreover, the "as applied" reasoning of *Grand Rapids*, which found that only .24% of commercial commercially useable real estate was available for the regulated activities there, produces a far different result here—designated evidence showed that there were at least twenty sites within designated districts, or 3.9% of those designated districts were available for operation of a sexually oriented business in Jackson County.

Lion's Den also cites to *Encore Videos, Inc. v. City of San Antonio*, 352 F.3d 938, 939 (5th Cir.2003). This opinion simply states that an ordinance "was found not to be narrowly tailored because for both its failure to make an on-site/off-site distinction and its low 20% inventory requirement." *Id.* at 939. Hence, the *Encore Videos* opinion cited by Lion's Den does *not* demonstrate that the ordinances herein are constitutionally overbroad. Moreover, we note that *Encore Videos, Inc. v. City of San Antonio*, 330 F.3d 288 (5th Cir.2003), *cert. denied*, which was clarified by the cited opinion, considered "the ordinance's constitutionality under the time, place, and manner test," 330 F.3d at 293; we find no discussion therein of a constitutional overbreadth challenge.

As noted above, the ordinances came before us with the presumption of constitutionality, and Lion's Den bore the burden of proof, with all doubts resolved against it. *See Dvorak*, 796 N.E.2d at 238. We do not find that Lion's Den has satisfied its burden of demonstrating to us that the ordinances are constitutionally overbroad.

5. *Counterclaim*

Finally, Lion's Den argues that its "foregoing arguments vividly demonstrate that

genuine issues of material fact existed that should have operated to preclude the entry of summary judgment in favor of" the Board. Lion's Den Br. at 37. Having found its "foregoing arguments" to fail, we find no error in the trial court's conclusion that the counterclaim failed as a matter of law. *Id.*

Affirmed.

NAJAM, J., and BAILEY, J., concur.