ATTORNEYS FOR APPELLANT
Alan S. Townsend
Paul D. Vink
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Thomas E. Mixdorf
Zeff A. Weiss
Abigail B. Cella
Indianapolis, Indiana

H. Wayne Phears
Norcross, Georgia



# In the
# Indiana Supreme Court

No. 29S04-0611-CV-469

THE CITY OF CARMEL, INDIANA,

*Appellant (Defendant below)*,

v.

MARTIN MARIETTA MATERIALS, INC.,

*Appellee (Plaintiff below)*.

Appeal from the Hamilton Superior Court, No. 29D03-0310-PL-939
The Honorable William J. Hughes, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A04-0506-CV-358

**April 3, 2008**

**Sullivan, Justice.**


The City of Carmel enacted an ordinance regulating mining within the City. The trial court prohibited enforcement of the ordinance based on the argument of Martin Marietta Materials, Inc., a mining concern, that the City did not follow the statutory requirements

applicable to enacting zoning ordinances. We find that the City was not required to utilize the zoning process in order to regulate mining in this way.

## Background

Martin Marietta Materials, Inc. has mined, processed, and sold sand, gravel, and limestone within the corporate limits of the City of Carmel for several decades. Martin Marietta's operations in Carmel consist of a quarry, an underground mine, and sand and gravel pits. As nearby residential development has increased in recent years, a growing number of complaints have been lodged with the City about Martin Marietta.

In 2005, following a failed attempt two years earlier,[1] the Carmel Common Council enacted Ordinance No. D-1686-04 As Amended ("Ordinance")[2] that regulated many aspects of mining within the City. At Martin Marietta's request, the trial court entered a temporary restraining order prohibiting the City from enforcing the Ordinance and subsequently granted Martin Marietta's request for a preliminary injunction to the same effect. City of Carmel v. Martin Marietta Materials, Inc., 849 N.E.2d 1197, 1202 (Ind. Ct. App. 2006). The Court of Appeals affirmed. Id. at 1212. Carmel petitioned for, and we granted, transfer, 860 N.E.2d 597 (Ind. 2006) (table), thereby vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A).

## Discussion

### I

The Ordinance's preamble sets forth the following purposes for its enactment:

---

[1] In 2003, the Carmel Common Council had enacted an ordinance imposing regulations and reporting requirements on mining activity. At Martin Marietta's request, the trial court entered a temporary restraining order prohibiting Carmel from enforcing the ordinance. Carmel repealed the ordinance in 2004, and the trial court dissolved the restraining order.

[2] The full title of the Ordinance is "Ordinance No. D-1686-04 As Amended: An Ordinance of the Common Council of the City of Carmel, Indiana, to Regulate Mining Operations Within the Corporate Boundaries of the City of Carmel."

Whereas, mining and the processing of mineral resources should give due regard to (1) the protection of the health, safety and general welfare of the people, (2) the prevention of erosion, stream pollution, water, air and land pollution; and (3) the prevention of negative impact to the City's water supply and other injurious effects to persons, property, wildlife and natural resources; and

Whereas, the Common Council of the City of Carmel finds that, for the protection of the public health, safety and welfare of the citizens of Carmel, to mitigate the negative impacts of mining and processing of mineral resources on those citizens who reside adjacent to or near such operations, and to maintain an environmentally sound and stable mining and processing industry, it is reasonable and necessary to regulate mining operations as provided in this Ordinance.

(Carmel, Ind., Ordinance No. D-1686-04 As Amended (2005), Pl.'s Ex. #3 in Volume of Exhibits.)

The substantive sections of the Ordinance are consistent with the preamble's stated intent.  Among many other regulations, the Ordinance addresses water and air pollution (id. § 6-171(h)(11)), lateral support to prevent collapse of underground tunnels (id. § 6-173(a)), uncontrolled movement of loose material (id. § 6-173(c)), perimeter fencing to keep out unauthorized persons (id. § 6-173(d)), and blasting practices and the handling of explosives to minimize the risk of injury or property damage (id. § 6-175).

As noted supra, Martin Marietta filed this lawsuit to prevent enforcement of the Ordinance.  The argument on which the company prevailed in the trial court and in the Court of Appeals is a fairly technical one: while the City has the authority to adopt an ordinance regulating mining, this Ordinance is invalid because it was not adopted in the manner required by the General Assembly.

Understanding Martin Marietta's position requires saying a few words about the legal authority of municipalities in Indiana.  In 1980, the General Assembly codified many of the provisions of Indiana law governing the authority and operation of local units of government –

counties, cities, towns, and townships – into a new title 36 of the Indiana Code.[3]  1980 Ind. Acts, Pub. L. No. 211, § 1 (codified at Ind. Code tit. 36 (1980)).

As we have observed elsewhere on several occasions, one of the most noteworthy aspects of this recodification was its granting to local units "home rule," I.C. §§ 36-1-3-1 to -9 (1980), explicitly "abrogat[ing]" the long-standing "Dillon Rule" that "any doubt as to the existence of a power of a unit shall be resolved against its existence."  Id. § 3.  From that point forward, the General Assembly mandated, "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence."  Id. § 3(b).  In fact, this rule is to be applied "even though [the power has] not [been] granted by statute," id. § 4(b)(2), and "even though a statute granting the power has been repealed," id. § 3(b).  "We believe this statutory scheme demonstrates a legislative intent to provide counties, municipalities, and townships with expansive and broad-ranging authority to conduct their affairs."  City of N. Vernon v. Jennings Nw. Reg'l Utils., 829 N.E.2d 1, 5 (Ind. 2005).

Nevertheless, the General Assembly has set forth a number of explicit procedural requirements for local units of government to exercise its powers and Martin Marietta is certainly correct that the mandates of the statutes as to the enactment of ordinances must be followed for those ordinances to be valid.

Indiana Code § 36-8-2-4 (2004 & Supp. 2007) provides that "[a] unit may regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare."  In reliance on that authority, the City's Common Council passed the Ordinance, the City's Mayor approved it, and the City's Clerk-Treasurer certified it, all as required by law. Ordinance at 27; See I.C. § 36-4-6-12 to -18.  The Ordinance provides that the director of the City's Department of Community Services is given powers and duties to administer and enforce the Ordinance.  Ordinance § 6-167(d).  The Ordinance further provides that decisions of the

---

[3] The Indiana Code is divided by subjects into 36 "titles."  Each title is further divided, first into "articles," then into "chapters," and then into "sections."  This organization is easily understood, thanks to a citation scheme that separates each of these divisions by hyphens.  For example, I.C. § 1-2-3-4 stands for section 4 of chapter 3 of article 2 of title 1 of the Indiana Code.

director are subject to review by the City's Board of Public Works,[4] id. § 6-177, and that final actions of the Board of Public Works are subject to judicial review, id.

Article 7 of title 36 governs the exercise of a local government unit's planning and development powers, including zoning. City zoning ordinances (and amendments to them) adopted under article 7 are subject to special procedures set forth in I.C. § 36-7-4-601 to 616 (2004 & Supp. 2007) ("600 Series Procedures"). See I.C. § 36-7-1-22. While a zoning ordinance amendment is ultimately passed by a city's Common Council, subject to mayoral review, the 600 Series Procedures dictate that the city's plan commission[5] must first review and make a recommendation with respect thereto. Once an amendment to a city zoning ordinance is passed, appeals from the application or enforcement of its terms are subject to review by the city's Board of Zoning Appeals.[6] I.C. § 36-7-4-918.1. Ex parte communications to members of a Board of Zoning Appeals are prohibited. Id. § 920(g). Final actions of a city's Board of Zoning Appeals are subject to judicial review. I.C. § 36-7-4-1003.

Indiana Code § 36-7-2-6 (2004 & Supp. 2007) provides that "[a] unit may regulate excavation, mining, drilling, and other movement or removal of earth below ground level." Because of its location in article 7 of title 36, Martin Marietta contends that the exercise of this authority is subject to (a) the requirements described in the preceding paragraph – the 600 Series Procedures – prior to adoption of any ordinance regulating mining, and (b) Board of Zoning

---

[4] For the City of Carmel, the members of the Board of Public Works are the Mayor and two other persons appointed by the Mayor. A member of the Board of Public Works may hold other appointive or elective positions in city government during the member's tenure. See I.C. § 36-4-9-8(c).

[5] For the City of Carmel, the City Plan Commission consists of nine members: one each appointed by the Common Council and the park board from their respective memberships; one member of (or designated representative appointed by) the City Works Board; the city civil engineer (or a qualified assistant appointed by) the city civil engineer; and five citizen members appointed by the Mayor, of whom no more than three may be of the same political party. See I.C. § 36-7-4-207.

[6] For the City of Carmel, the city Board of Zoning Appeals consists of five members: one appointed by the City Plan Commission from its membership; one citizen member appointed by the city's fiscal body, who must not be a member of the plan commission; and three citizen members appointed by the Mayor, of whom one must be another member of the plan commission and two must not be members of the plan commission. See I.C. § 36-7-4-902.

Appeals review of any appeals from the application or enforcement of such an ordinance's terms.[7]

In summary, the City has enacted the Ordinance in a general exercise of its authority to "regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare" as authorized by I.C. § 36-8-2-4 without complying with the special requirements applicable to zoning ordinances mandated by the 600 Series Procedures. Martin Marietta believes that a city ordinance regulating mining may be enacted only by complying with the 600 Series Procedures. The trial court agreed and entered a preliminary injunction prohibiting enforcement of the Ordinance on this basis. The Court of Appeals affirmed on this basis as well.

## II

### A

We do not agree with Martin Marietta's view that the language of title 36, article 7 indicates that the General Assembly intended to subject the regulation of mining exclusively to the zoning process.

First, the language of I.C. § 36-7-2-6 that "[a] unit may regulate excavation, mining, drilling, and other movement or removal of earth below ground level" supports a reading that the General Assembly's intent here was simply to make clear that the zoning power of a unit of local government covers not only surface land uses but extends to subterranean uses as well. While Martin Marietta takes the position that this language covers both surface and subterranean uses, the legislative history of this provision suggests otherwise. Prior to the recodification of local government law into title 36 referred to in Part I, supra, municipal law was largely contained in title 18. In 1971, the General Assembly recodified sections of title 18 in what appears to have been an effort to modernize the language and organize more logically the provisions governing

---

[7] At oral argument, counsel for Martin Marietta contended that review by the City Plan Commission prior to adoption of the ordinance and the right of appeal to the Board of Zoning Appeals were important because of the Commission's and Board's relative independence from the Mayor as opposed to the Board of Public Works.

the powers and authority of mayors and city councils. 1971 Ind. Acts, Pub. L. No. 250, § 1 (codified at I.C. tit. 18, arts. 1 to 1.5 (1976)). But the 1971 revision also added new language, including a new I.C. § 18-1-1.5-11 entitled "Subterranean Powers."[8] When the General Assembly recodified all local government law into title 36 in 1980, the subheading "Subterranean Powers" was dropped (as were all subheadings) and the language set forth in footnote eight shortened to provide: "A unit may regulate excavation, mining, drilling, and other movement or removal of earth below ground level." This was the origin of I.C. § 36-7-2-6. This history indicates to us that the General Assembly meant this provision to refer only to subterranean uses of land.

Second, I.C. § 36-7-2-6 itself appears amidst a rather eclectic series of code sections, none of the others of which suggest an intent on the General Assembly's part to assign exclusive regulation of their subject matter to the zoning process. For example, the section immediately before I.C. § 36-7-2-6 provides that "[a] unit may repair, alter, or destroy structures and other improvements if necessary." I.C. § 36-7-2-5 (2004 & Supp. 2007). Certainly a city can engage in these activities outside the zoning process. Similarly, the section immediately after I.C. § 36-7-2-6 provides that "[a] unit may promote economic development and tourism," I.C. § 36-7-2-7 (2004 & Supp. 2007), and cannot possibly mean that a city cannot engage in economic development or tourism promotion outside the zoning process.

Both the legislative history of I.C. § 36-7-2-6 and its context within article 7 do not indicate any intent on the Legislature's part to subject the regulation of mining exclusively to the zoning process.

---

[8] I.C. § 18-1-1.5-11 (1976) states in its entirety: "A city shall have power to exercise control relating to the improvement, maintenance and use of real property below ground level; this shall include, but not be limited to, the power to: (a) Regulate, license and prohibit any movement or removal of earth in such a manner as to leave a space devoid of earth below the surrounding ground level, including but not limited to excavating, drilling, mining, burrowing and tunneling; (b) Regulate, license and prohibit the introduction of any substance into any subterranean stream or body of water in such a manner as to endanger the public health, safety, or welfare or cause injury to property," quoting 1971 Ind. Acts, Pub. L. No. 250, § 11.

**B**

In its arguments in the trial court and on appeal, the City has attempted to set up a dichotomy between what it refers to as a governmental unit's "zoning power" and "police power" as if they are mutually exclusive. Martin Marietta's analysis in this regard is more correct, classifying zoning powers as a subset of the broader police powers entrusted to governmental units. As the Court of Appeals said in this case, "[i]nstead of being a separate alternative to the use of police power, zoning powers are included among police powers that must be exercised for the public health, safety, and welfare." Martin Marietta, 849 N.E.2d at 1208. See also Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 387 (1926) ("The [zoning] ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare."); Bd. of Zoning Appeals of Decatur v. Decatur, Ind. Co. of Jehovah's Witnesses, 233 Ind. 83, 117 N.E.2d 115, 117 (1954) ("Zoning ordinances and regulations find their justification in the police power of the state.").

But Martin Marietta's argument, adopted by the trial court and Court of Appeals, goes even farther to assert that where an ordinance regulates "how real property is developed, maintained, and used," it is a zoning ordinance. Martin Marietta, 849 N.E.2d at 1207 (emphasis in the original). To support this conclusion, the Court of Appeals pointed to two cases in which it said that the ordinances at issue were zoning ordinances because they restricted or regulated the use of land. Id. at 1208 (discussing Bd. of Comm'rs of LaPorte County v. Town & Country Utils., Inc., 791 N.E.2d 249, 255 (Ind. Ct. App. 2003), trans. denied, and Pro-Eco, Inc. v. Bd. of Comm'rs of Jay County, Indiana, 776 F. Supp. 1368, 1371 (S.D. Ind. 1990), aff'd, 956 F.2d 635 (7th Cir. 1992)).

We do not disagree that the ordinances in Town and Country and Pro-Eco were zoning ordinances. However, they were zoning ordinances not because they involved the regulation of the use of land, but because they dictated what type of land use was permitted and where — quintessential zoning. "The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas." Ragucci v. Metro. Dev. Comm'n of Marion County, 702 N.E.2d 677, 679 (Ind. 1998). "A typical zoning ordinance divides the jurisdiction to which

8

it applies into several districts, specifying the use or uses of land permitted in each. Common use classifications include residential, commercial, business, and industrial districts, although each may be subject to further subclassifications." 30 Indiana Law Encyclopedia 627 (2008) (citing 83 Am. Jur. 2d, Zoning and Planning § 156 (2003)).

In point of fact, several Indiana decisions have upheld ordinances that regulated how property was used and maintained, but were not zoning ordinances. See, e.g., Spitler v. Town of Munster, 214 Ind. 75, 14 N.E.2d 579 (1938) (regulating the maximum length of stay and minimum size of sleeping rooms in tourist camps); Mathys v. City of Berne, Inc., 501 N.E.2d 1142, 1143 (Ind. Ct. App. 1986) (prohibiting storage of inoperative cars or scrap metal on one's personal premises); Starzenski v. City of Elkhart, 659 N.E.2d 1132, 1140 (Ind. Ct. App. 1996), trans. denied (prohibiting the storage of excess trash and debris on one's personal premises).

To repeat, a unit's zoning power is a subset of its police power; they are not mutually exclusive. But the fallacy in Martin Marietta's argument is its contention that when a unit exercises its police power, at least with respect to mining, the unit is compelled to utilize the zoning process. When dictating what type of land use is permitted and where, a unit must employ the zoning process and follow the 600 Series Procedures. But beyond that, a unit may, but is not required to, use the zoning process to regulate mining. In the alternative, the City may proceed as it did here.

C

Upholding the authority of the City to operate outside the zoning process as it did here is consistent with the "home rule" philosophy of title 36 described in Part I, supra. In Tippecanoe County v. Indiana Manufacturer's Ass'n, this Court cautioned against restricting the scope of a municipality's powers under the Home Rule Act, I.C. §§ 36-1-3-1 to -9 (1980). 784 N.E.2d 463 (Ind. 2003). Like the appellants in that case, who argued that township assessors had exclusive statutory power to audit personal property tax returns, Martin Marietta and the Court of Appeals assert here that zoning procedures are the exclusive mechanism to regulate mining. Tippecanoe County held that a county had authority under the Home Rule Act to hire a firm on a commission

9

basis to audit personal property returns. "A statute imposing responsibility on township assessors to review personal property tax returns does not diminish the presumed power of other local officials who share responsibility for personal property taxation to conduct audits." Id. at 466. Likewise, I.C. § 36-8-2-4 and the Home Rule Act authorize the City Council to regulate mining without diminishing the exclusive authority of zoning procedures with respect to dictating what type of land use is permitted and where.

## IV

In the trial court, Martin Marietta advanced two additional arguments in contending that the Ordinance was invalid. Because the trial court and the Court of Appeals adopted Martin Marietta's first argument, it was not necessary for either to address these arguments and they did not. However, on appeal Martin Marietta renewed one of these arguments and advanced a new one as alternative grounds for sustaining the judgment of the trial court.

## A

First, Martin Marietta argued to the trial court that the Ordinance unlawfully delegated legislative authority to an administrative official. While the City characterized this as an attack on the Ordinance's constitutionality, Martin Marietta seems to raise more of a common law claim. In any event, title 36 (which neither side cites in this regard) contains a chapter mandating the separation of powers between the executive and legislative branches of city government and we will treat Martin Marietta's claim as arising under that statute. See I.C. § 36-4-4-1 to -4 (2004) & -5 (Supp. 2007).[9]

The city separation of powers statute provides that "[t]he powers of a city are divided between the executive and legislative branches of its government. A power belonging to one (1) branch of a city's government may not be exercised by the other branch." I.C. § 36-4-4-2(a)

---

[9] The Indiana Commission on Local Government Reform has recommended that a portion of this statute, I.C. § 36-4-4-2(b), be repealed. Indiana Commission on Local Government Reform, Streamlining Local Government 37 (Dec. 11, 2007) (available at http://www.indianalocalgovreform.iu.edu/assets/docs/Report_12-10-07.pdf).

(2004 & Supp. 2007).  This is similar to the Indiana Constitution's state constitutional provision applicable to state government:  "The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."  Ind. Const. art III, § 1.  In addition, article IV, section 1 of the Indiana Constitution states in part, "[t]he Legislative authority of the State shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  Of this latter provision, this Court has said:

> This provision has been construed to mean that although the legislature cannot delegate the power to make a law, it can make a law delegating power to an agency "to determine the existence of some fact or situation upon which the law is intended to operate."  Edwards v. Housing Authority of City of Muncie, supra, 215 Ind. at 339, 19 N.E.2d at 746.  Reasonable standards are necessarily imposed when the legislature delegates discretionary duties to administrative boards and officers.  Ennis v. State Highway Commission, supra.  In Matthews v. State, (1958) 237 Ind. 677, 681-2, 148 N.E.2d 334, 336, we stated:
>
>> [T]he policy of the Legislature and the standards to guide the administrative agency may be laid down in very broad and general terms.  Such terms get precision from the knowledge and experience of [persons] whose duty it is to administer the statutes, and then such statutes become reasonably certain guides in carrying out the will and intent of the Legislature.  Mutual Film Corp. v. Ohio Indus'l Comm. (1915), 236 U.S. 230, 245, 35 S. Ct. 387, 391, 59 L. Ed. 552, 560; 42 Am. Jur., Public Administrative Law, § 45, p. 346.

Steup v. Ind. Hous. Fin. Auth., 273 Ind. 72, 402 N.E.2d 1215, 1227-28 (1980).

We believe these principles well describe the relationship between the executive and legislative branches of city government as well.  We have studied the Ordinance in some detail and find nothing in it that runs afoul of these principles.

Martin Marietta relies on Burrell v. Lake County Plan Commission for the proposition that an administrator may not exercise the sort of discretion reserved to a legislative body.  624 N.E.2d 526, 532 (Ind. Ct. App. 1993), trans. denied.  The company argues the Ordinance

11

improperly delegates legislative authority to the Administrator to make the findings necessary to approve a mining permit.[10] We find Burrell is particularly instructive in this regard because in it, the Court of Appeals found no improper delegation. Rather, it held that "the health, safety, and general welfare standard of which the Burrells complain[ed did] not represent an improper delegation of legislative authority because the Ordinance provide[d] guidelines regarding those characteristics considered adverse to the community." Burrell, 624 N.E.2d at 532. We find the same with respect to this Ordinance.

Martin Marietta also relies on City of Hammond v. Red Top Trucking Co., Inc., in which the Court of Appeals invalidated a permitting ordinance on grounds that it "contained no standards to guide the council when it decided whether to ratify the permit." 409 N.E.2d 655, 659-60 (Ind. Ct. App. 1980). In contrast to that ordinance, we find such standards in the Ordinance at issue here.

Lastly, Martin Marietta cites Schakel v. Review Board of the Indiana Employment Security Division, where the Court of Appeals found the regulations at issue to be an illegal delegation of legislative power. 142 Ind. App. 475, 235 N.E.2d 497, 500 (1968), trans. denied. But the illegal delegation was the authorization to the state agency to waive or modify the denial of unemployment compensation benefits for nothing more definite than "good cause." Id. In contrast to that statute, we find the delegation of authority in the Ordinance here far more definite.

The Ordinance does not unlawfully delegate legislative authority to an administrative official.

**B**

Second, Martin Marietta argued to the trial court that the Ordinance was "arbitrary and capricious and not reasonably related to any legitimate health, safety, or welfare concern."

---

[10] The Administrator may approve a permit only upon a finding that "the Mining activity will not impose a significant detrimental impact on the health, safety, and general welfare of the public or the City's water supply." Ordinance § 6-169(b)(2)(b).

(Verified Am. Compl. ¶ 42, Pl.'s Ex. #5 in Volume of Exhibits.)  However, Martin Marietta does not renew this argument on appeal and we consider it to have been abandoned.  Instead, the company makes an entirely different (and somewhat contradictory) argument: that the Ordinance was "vague, ambiguous, and contains insufficiently ascertainable standards."  (Br. of Appellee at 29.)  The company goes on to contend that the Ordinance "violates due process because it fails to give fair warning as to (1) who will be authorized to issue permits to conduct mining operations, (2) what standards will be considered in determining whether to grant a permit, and (3) whether the mining operation is in compliance with the Amended Ordinance."  Id. at 30.  These arguments not having been raised until appeal, we decline to consider them as alternative bases for affirming the judgment of the trial court.

**Conclusion**

The decision of the trial court is reversed.

Shepard, C.J., and Dickson, Boehm, and Rucker, JJ., concur.

13