

**FILED**

Mar 28 2016, 8:27 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEES |
|---|---|
| Christopher D. Shelmon | Jay Seeger |
| Andrew S. Gutwein | Seeger and Forbes |
| Michael R. Hartman | Lafayette, Indiana |
| Gutwein Law | |
| Lafayette, Indiana | Ryan C. Munden |
| | Robert C. Reiling |
| | Reiling Teder & Schrier, LLC |
| | Lafayette, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rogers Group, Inc., | March 28, 2016 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 79A02-1506-PL-694 |
| v. | Appeal from the Tippecanoe Superior Court |
| Tippecanoe County, Board of Commissioners of Tippecanoe County, and its commissioners, Tracy Brown, David Byers, and Thomas Murtaugh, in their official capacities, the Area Board of Zoning Appeals of Tippecanoe County, Steve Clevenger, President, in his official capacity; the Area Plan Commission of Tippecanoe County, Tim Shriner, President in his official capacity; and the Tippecanoe County Building | The Honorable Randy J. Williams, Judge |
| | Trial Court Cause No. 79D01-1501-PL-01 |

Commissioner, Ken Brown, in
his official capacity,

*Appellees-Defendants.*

**Vaidik, Chief Judge.**

# Case Summary

Rogers Group, Inc., which seeks to build and operate a quarry on certain land in Tippecanoe County, filed a lawsuit challenging two county ordinances: one that prohibits new quarries within two miles of residential areas, and one that requires parties seeking to mine in a flood plain to first obtain a special exception from the board of zoning appeals. We conclude that the quarry ban is a zoning ordinance under our Supreme Court's decision in *City of Carmel v. Martin Marietta Materials, Inc.*, 883 N.E.2d 781 (Ind. 2008), and that it is void because it was not enacted in accordance with Indiana's zoning statutes. However, the county's requirement of a special exception to mine in a flood plain is valid and enforceable under state statute and this Court's precedent.

# Facts and Procedural History

[2] Rogers Group wants to develop a quarry on certain land in an unincorporated area of Tippecanoe County. However, the county has enacted an ordinance that prohibits the construction or operation of a new quarry on any site in the county which has 100 or more residential homes within a two-mile radius. *See* Code of Ordinances of Tippecanoe County, Chapter 162 ("Prohibition Ordinance"). This restriction, we are told, would preclude the Rogers Group project. Even if it would not, the land at issue is zoned "Flood Plain," and a separate county ordinance requires a party seeking to mine in such a zone to obtain a "special exception" from the Area Board of Zoning Appeals of Tippecanoe County ("Area BZA"). *See* Tippecanoe County Unified Zoning Ordinance, § 3-2-3.

[3] As part of its effort to develop the quarry, Rogers Group filed suit against various Tippecanoe County agencies and officials (collectively, "the County"), asking the trial court to declare both ordinances invalid. Rogers Group claimed, among other things, that the Prohibition Ordinance is a zoning ordinance, that zoning ordinances can only be enacted using the procedures set forth in Indiana Code sections 36-7-4-601 through 616 ("600 Series Procedures"), that the Prohibition Ordinance was not so enacted, and that it is therefore illegal and unenforceable.[1] Rogers Group also alleged that the special

---

[1] Rogers Group also made two claims based on the fact that the Prohibition Ordinance was not passed until after Rogers Group had leased mineral rights and made significant investments on the project. First, it

exception requirement was enacted pursuant to Indiana Code chapter 36-7-4 and that it is therefore invalid under Indiana Code section 36-7-4-1103(c), which provides, "ADVISORY—AREA. This chapter does not authorize an ordinance or action of a plan commission that would prevent, outside of urban areas, the complete use and alienation of any mineral resources or forests by the owner or alienee of them."[2]

[4] On cross-motions for summary judgment, the trial court ruled in favor of the County. Specifically, the trial court concluded that (1) the County's enactment of the Prohibition Ordinance was a valid exercise of its "police power" and "did not require authority pursuant to Article 7, Chapter 4[,]" Appellant's App. p. 11, and (2) the special exception requirement is permissible under our 1997 decision in *Irving Materials, Inc. v. Board of Commissioners of Johnson County*, 683 N.E.2d 260 (Ind. Ct. App. 1997), in which we recognized a "flood plain" exception to a previous version of Indiana Code section 36-7-4-1103(c).

# Discussion and Decision

[5] Rogers Group contends that the trial court erred by granting summary judgment in favor of the County. Under Indiana Trial Rule 56(C), summary

---

alleged that even if the Prohibition Ordinance is generally valid, it cannot be applied to Rogers Group under the doctrine of vested rights. *See, e.g., City of New Haven v. Flying J, Inc.*, 912 N.E.2d 420, 424 (Ind. Ct. App. 2009), *trans. denied*. Alternatively, it asserted that applying the Prohibition Ordinance to halt its project would constitute a taking for which just compensation must be paid. The trial court rejected these claims. Because we hold that the Prohibition Ordinance is invalid and unenforceable, we need not address them.

[2] We address the significance of the "ADVISORY—AREA" heading below.

judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Where, as here, the relevant facts are undisputed and resolution of the case turns on questions of law, a grant of summary judgment is particularly appropriate. *See Clem v. Watts*, 27 N.E.3d 789, 791 (Ind. Ct. App. 2015). On appeal from a grant of summary judgment, however, we address the issues de novo, giving no deference to the trial court's decision. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009); *Ind. Dep't of Correction v. Swanson Servs. Corp.*, 820 N.E.2d 733, 736-37 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*.

# I. Prohibition Ordinance

[6] Rogers Group first argues that the Prohibition Ordinance is a zoning ordinance, should have been enacted as such, and is invalid because it was not. The County does not claim that it enacted the Prohibition Ordinance in accordance with the 600 Series Procedures (Ind. Code §§ 36-7-4-601 through 616), nor does it dispute that we would have to invalidate the ordinance if we conclude that it is a zoning ordinance. Its sole argument is that the Prohibition Ordinance is not a zoning ordinance. We disagree.

[7] Our Supreme Court addressed a very similar issue in its decision in *City of Carmel v. Martin Marietta Materials, Inc.*, 883 N.E.2d 781 (Ind. 2008). The City of Carmel had enacted an ordinance "that regulated many aspects of mining within the City," including water and air pollution, lateral support to prevent

collapse of underground tunnels, uncontrolled movement of loose material, perimeter fencing to keep out unauthorized persons, and blasting practices and the handling of explosives to minimize the risk of injury or property damage. *Id.* at 783. However, it did not ban mining completely or restrict mining to specific areas in the city. Nonetheless, a mining company sued to enjoin enforcement of the ordinance, arguing that it was a zoning ordinance that should have been, but was not, created using the 600 Series Procedures.

[8] In rejecting the mining company's argument, our Supreme Court emphasized that the Carmel ordinance merely regulated *how* mining was to be conducted, whereas a zoning ordinance "dictat[es] what type of land use is permitted and where[.]" *Id*. at 786-87 (emphasis added). In other words, "'The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas.'" *Id.* at 787 (quoting *Ragucci v. Metro. Dev. Comm'n of Marion Cnty.*, 702 N.E.2d 677, 679 (Ind. 1998)). Because the Carmel ordinance did not ban or permit mining citywide or confine it to particular parts of the city, it was not a zoning ordinance, and the city's noncompliance with the 600 Series Procedures was irrelevant. *Id.*

[9] Here, on the other hand, the Prohibition Ordinance would most definitely confine a certain class of use (quarries) to designated areas (two miles from "residential areas"). This, as our Supreme Court said in *Martin Marietta*, is "quintessential zoning." *Id.* at 787.

[10]     In urging us to hold that the Prohibition Ordinance is not a zoning ordinance, the County relies on two post-*Martin Marietta* decisions. In the first, *Uniontown Retail #36, LLC v. Board of Commissioners of Jackson County*, 950 N.E.2d 332 (Ind. Ct. App. 2011), *trans. denied*, we held that a licensing ordinance that prohibited the operation of a sexually oriented business within 1,000 feet of any residence was not a zoning ordinance and therefore was not subject to the 600 Series Procedures. In the second, *BBL, Inc. v. City of Angola*, No. 1:13-CV-76-RLM, 2014 WL 26093 (N.D. Ind. Jan. 2, 2014) (unpublished), the U.S. District Court for the Northern District of Indiana relied on our decision in *Uniontown Retail #36* in holding that a very similar licensing ordinance was not a zoning ordinance. In both cases, however, the local governments had adopted *separate* zoning ordinances that included buffer requirements identical to the buffer requirements in the challenged licensing ordinances. *Uniontown Retail #36*, 950 N.E.2d at 335, 338; *BBL*, 2014 WL at *2, *5. Therefore, the conclusions that the challenged licensing ordinances were not also zoning ordinances were unnecessary to the opinions and lack precedential effect. *See, e.g., Trabucco v. Trabucco*, 944 N.E.2d 544, 560 n.5 (Ind. Ct. App. 2011), *trans. denied*; *Oshinski v. N. Ind. Commuter Transp. Dist.*, 843 N.E.2d 536, 545 (Ind. Ct. App. 2006). In fact, on appeal in the *BBL* case, the Seventh Circuit said as much:

> The City maintains that the licensing ordinance doesn't qualify as a zoning ordinance under Indiana law. The judge agreed. *We don't see how the classification matters* for purposes of BBL's request for a preliminary injunction. The same 750–foot buffer zone was included in the November 2012 amendments to the zoning ordinance, and BBL doesn't challenge the City's process for

> adopting these amendments. So a preliminary injunction against the same provision in the licensing ordinance *would be pointless.*

*BBL, Inc. v. City of Angola*, 809 F.3d 317, 329 (7th Cir. 2015) (emphasis added).

[11]     In any event, the Prohibition Ordinance is plainly a zoning ordinance under the test set forth by our Supreme Court in *Martin Marietta*. In holding that a zoning ordinance is one that "dictates what type of land use is permitted and where," the Court cited as examples the landfill ordinances at issue in *Board of Commissioners of LaPorte County v. Town & Country Utilities, Inc.*, 791 N.E.2d 249 (Ind. Ct. App. 2003), *trans. denied*, and *Pro-Eco, Inc. v. Board of Commissioners of Jay County, Indiana*, 776 F. Supp. 1368 (S.D. Ind. 1990), *aff'd*, 956 F.2d 635 (7th Cir. 1992). The ordinance challenged in *Town & Country* prohibited the development of a landfill absent prior written approval from the local solid waste district board. The ordinance in question in *Pro-Eco* imposed a countywide moratorium on the location, construction, or operation of any new landfill. Our Supreme Court unambiguously classified these ordinances as zoning ordinances. *Martin Marietta*, 883 N.E.2d at 787.

[12]     Because the Prohibition Ordinance, even more clearly than the ordinances in *Town & Country* and *Pro-Eco*, purports to dictate what type of land use is permitted and where, it is a zoning ordinance under our Supreme Court's analysis in *Martin Marietta*. As such, the County was required to comply with the 600 Series Procedures. Since it did not, the ordinance is invalid and

unenforceable, and Rogers Group is entitled to summary judgment on this issue.[3]

# II. Special Exception Requirement

[13] Rogers Group also challenges the requirement that it obtain a special exception from the Area BZA before mining in a Flood Plain zone. Rogers Group contends that this requirement is invalid under Indiana Code section 1103(c), which, again, provides, "ADVISORY—AREA. This chapter does not authorize an ordinance or action of a plan commission that would prevent, outside of urban areas, the complete use and alienation of any mineral resources or forests by the owner or alienee of them." The trial court rejected this argument, ruling that there is a "flood plain" exception to Section 1103(c). We agree with the trial court.

[14] In order to understand Section 1103(c) and the trial court's interpretation of it, we must first address the overall structure of Indiana Code chapter 36-7-4 and the specific language and history of Section 1103(c). Chapter 36-7-4 provides for three different types of local planning: advisory planning, area planning, and metropolitan development. Those provisions of the chapter with headings that include "ADVISORY" apply to advisory planning. Ind. Code § 36-7-4-101.

---

[3] Focusing on our Supreme Court's statement in *Martin Marietta* that a zoning ordinance "dictates what type of land use is *permitted* and where," 883 N.E.2d at 787 (emphasis added), the County suggests that the Prohibition Ordinance cannot be a zoning ordinance because it would *prohibit* mining in certain areas, not *permit* mining in certain areas. This is an arbitrary distinction that has no basis in the actual holding in *Martin Marietta*. The ordinances in *Town & Country* and *Pro-Eco* were also prohibitive, not permissive, and our Supreme Court did not hesitate to conclude that they were zoning ordinances.

Those provisions with headings that include "AREA" apply to area planning. Ind. Code § 36-7-4-102. Those provisions with headings that include "METRO" apply to metropolitan development. Ind. Code § 36-7-4-103. Those provisions without headings apply to all three types of planning. Ind. Code §§ 36-7-4-101, 102, and 103.

[15] In 1997, we addressed Chapter 36-7-4, including a prior version of Section 1103(c), in *Irving Materials*, 683 N.E.2d 260. At the time, Section 1103(c) provided, "ADVISORY. The advisory planning law does not authorize an ordinance that would prevent, outside of urban areas, the complete use and alienation of any mineral resources or forests by the owner or alienee of them." Ind. Code § 36-7-4-1103(c) (1997). Both the heading and the language of the provision made clear that, at the time, it applied only to advisory planning jurisdictions. *See* Ind. Code §§ 36-7-4-101, 102, and 103. Johnson County was such a jurisdiction, and it had a zoning ordinance that, like the Tippecanoe County ordinance at issue here, required a party seeking to mine on land located in a flood plain to first obtain a special exception from the board of zoning appeals. *Irving Materials*, 683 N.E.2d at 261. A mining company claimed that the requirement was invalid under Section 1103(c). *Id.* The trial court rejected this argument and ruled in favor of Johnson County. *Id.* at 262.

[16] On appeal, we acknowledged that Section 1103(c) generally "prevented the local zoning board from restricting the excavation of minerals on real estate located in a non-urban area." *Id.* at 263. However, we held that our legislature "created an exception" to this general rule when it enacted other provisions of

Chapter 36-7-4—specifically, Sections 201, 503(2)(I), and 601(c)(1) and (d)(2)(D)—that "empowered counties to regulate land use in flood plains[.]" *Id.* We reached this conclusion notwithstanding the fact that Sections 201, 503(2)(I), and 601(c)(1) and (d)(2)(D) had no headings and therefore were part of "the advisory planning law" and were explicitly subject to Section 1103(c). *See* Ind. Code § 36-7-4-101. In light of this reading of Chapter 36-7-4 in its entirety, we held that "Johnson County possesses the statutory authority to require a special exception to extract mineral resources located in a flood plain *even when the property lies in a non-urban area*." *Irving Materials*, 683 N.E.2d at 264 (emphasis added).

[17] Two years after we decided *Irving Materials*, the General Assembly amended Section 1103(c) by (1) adding the "AREA" heading to the "ADVISORY" heading, (2) changing "The advisory planning law" to "This chapter," and (3) adding "or action of a plan commission" after "ordinance." *See* Pub. L. 216-1999, § 5. In other words, before the amendment, Section 1103(c) applied only to ordinances in advisory planning jurisdictions. As a result of the amendment, the provision now applies to both ordinances and actions of plan commissions in both advisory and area planning jurisdictions. Tippecanoe County is an area planning jurisdiction and is therefore subject to Section 1103(c).

[18] Rogers Group contends that in addition to extending the reach of Section 1103(c) to area planning jurisdictions, the amendment eliminated the flood plain exception that we identified in *Irving Materials*. Specifically, it argues that the effect of the change of the opening phrase from "The advisory planning

law" to "This chapter" was to preclude any possible exception based on other parts Chapter 36-7-4, including the flood plain exception. We cannot agree.

[19] As Rogers Group itself observes, we presume that when our legislature amends a statute, it is aware of the history of the statute, including court decisions construing it. Appellant's Br. p. 23 (citing *Security Trust Corp. v. Estate of Fisher ex rel. Roy*, 797 N.E.2d 789, 793-94 (Ind. Ct. App. 2003), *trans. denied*). As such, we presume that the General Assembly was aware that, in 1997, we upheld a flood plain special exception ordinance based on Sections 201, 503, and 601, even though the then-existing version of Section 1103(c) provided that "The advisory planning law" (including Sections 201, 503, and 601) did not authorize such ordinances. That being the case, we cannot say that the legislature evinced an intent to eliminate the flood plain exception simply by changing "The advisory planning law" to "This chapter," since Sections 201, 503, and 601 are part of "This chapter," just as they were part of "The advisory planning law" in 1997. Therefore, the 1999 amendment changed very little about the substantive effect of Section 1103(c).

[20] Rogers Group also argues that the General Assembly must have intended to abrogate our holding in *Irving Materials* because "the amended statute now expressly addresses actions as well as ordinances." Appellant's Br. p. 25. However, the only "actions" that the amended Section 1103(c) addresses are actions "of a plan commission." Because *Irving Materials* involved a requirement to obtain a special exception from a BZA, one would certainly think that if the legislature intended to override our holding in that case, it

would have referenced BZA actions instead of, or at least in addition to, actions of plan commissions.

[21] We conclude that the legislature did not abolish or otherwise alter the flood plain exception when it amended Section 1103(c) to add the "AREA" heading and to change "The advisory planning law" to "This chapter." If Rogers Group believes that the legislature had a contrary intent, its remedy lies in the legislative process, not in this Court. For now, because Section 1103(c) continues to be subject to a flood plain exception, we affirm the trial court's ruling that Rogers Group must obtain a special exception from the Area BZA if it wishes to mine in a Flood Plain zone.[4]

# Conclusion

[22] We reverse the trial court's determination that the Prohibition Ordinance is not a zoning ordinance and therefore did not have to be passed in accordance with the 600 Series Procedures. We remand with instructions to enter summary judgment in favor of Rogers Group on this issue. However, we affirm the grant of summary judgment in favor of the County regarding the validity and enforceability of the special exception requirement.

---

[4] Rogers Group notes that the factors to be considered under Tippecanoe County's special exception ordinance do not specifically address flooding or flood prevention and that it is therefore possible that the Area BZA would deny a special exception for reasons having nothing to do with flood control, contrary to the rationale underlying our decision in *Irving Materials*. If Rogers Group is denied a special exception for what it believes are invalid reasons, it can seek judicial review of that denial. *See* Ind. Code § 36-7-4-1601 *et seq.*

Affirmed in part and reversed and remanded in part.

Bailey, J., and Crone, J., concur.